1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES ZACHARIE,

11              Plaintiff,                No. CIV S-07-1749 FCD EFB P

12        vs.

13   M. CHIRILA, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42

17   U.S.C. § 1983.  Pending before the court is defendants' August 27, 2007, motion to dismiss for

18   failure to state a claim upon which relief can be granted and for failure to exhaust the available

19   administrative remedies.  As explained below, the court construes the motion seeking dismissal

20   on the grounds that plaintiff failed to exhaust the available administrative remedies as a motion

21   for summary judgment.  For the reasons explained below, the motion must be granted.

22   **I.    Facts**

23        Plaintiff's August 27, 2007, complaint alleges that defendant, M. Chirila, violated

24   plaintiff's right to due process on March 25, 2006, while presiding over a disciplinary hearing.

25   The complaint also alleges that defendant, G. Gonzales, retaliated against plaintiff.  In particular,

26   plaintiff claims that he was charged with battery on a peace officer for having bumped into a

1

1   guard.  Compl., at 5 & Ex. A, at unnumbered page 1.  He asserts that he requested the presence

2   of a witness to testify at the hearing, but Chirila ignored the request.  Compl., at 5, and Ex. A, at

3   unnumbered page 1.  After the March 25, 2006, hearing, over which Chirila presided, plaintiff

4   was found guilty.  *Id.*   The punishment was a loss of 150 days' work time credit and a 12-month

5   term in the segregated housing unit ("SHU").  Compl., Ex. A, at unnumbered page 1.  Plaintiff

6   appealed the decision.  Compl., Ex. A, at unnumbered page 2.  Meanwhile, prison officials

7   decided to transfer plaintiff to California State Prison, Corcoran to serve the SHU term.

8   However, plaintiff's appeal was successful, and on June 14, 2006, prison officials ordered that

9   the matter be re-heard.  Compl., Ex. A, at unnumbered page 2.  On that same date plaintiff was

10  transferred to California State Prison, Corcoran in order to serve his SHU term.  Compl., at 5, 7.

11       On June 23, 2006, Gonzales made an inventory of plaintiff's property and on July 5,

12  2006, Gonzales gave plaintiff some, but not all, of his property.  Compl., at 5, 7.  Plaintiff

13  asserted that the property restrictions did not apply to him because his disciplinary conviction

14  had been vacated and would be rehard and Gonzales initially agreed with him.  Compl., at 7.

15  However, Gonzales then read the disciplinary report and saw that plaintiff had been charged with

16  battery on a peace officer.  *Id.*  At that point, Gonzales allegedly "stated with contempt in his

17  voice that they may not make you pay but I will."  *Id.*  On August 8, 2006, someone (plaintiff

18  does not allege that it was Gonzales) disposed of plaintiff's property in a manner that did not

19  comply with the regulations of the California Department of Corrections and Rehabilitations

20  ("CDCR").  Compl., at 7.  Plaintiff claims that this disposal was retaliatory in nature.  *Id.*  On

21  November 22, 2006, prison officials held a second hearing, and plaintiff again was found guilty

22  and sentenced to serve a 12-month term in the SHU.  Compl., at 5 & Ex. A, at unnumbered page

23  3.  Plaintiff does not allege that he lost any time credit, but he served a total of 290 days in the

24  SHU, where he was confined to an isolation cell, had fewer than 10 hours' yard time each week,

25  was deprived of most of his personal property and was denied various privileges, such as access

26  to a telephone and educational programs.  Compl., at 5-6.

1    On March 6, 2007, plaintiff filed a grievance complaining about the confiscation of his

2    property.  Pl.'s Opp'n, at unnumbered p. 3.  On March 13, 2007, the appeals coordinator rejected

3    the appeal without reviewing it on the ground that the "time lapse between when the action or

4    decision occurred and when [he] filed [his] appeal" was too great, and plaintiff had not

5    adequately explained the delay.  *Id.*, at unnumbered page 5.  The notice explained that if plaintiff

6    wished to pursue his appeal, he "must submit an explanation and supporting documentation

7    explaining why [he] did not or could not file" a timely appeal.  *Id.*  The notice informed plaintiff

8    that he had 15 days to submit any explanation and documentation plaintiff might have.  *Id.*

9    Plaintiff has submitted a hand-written document on plain paper dated March 20, 2007, and

10   styled, "response to first level."  Compl., Ex. A, at unnumbered page 6.  In it, he explained that

11   he thought that any appeal before he received his property upon release from the SHU would

12   have been premature.  *Id.*  Plaintiff also has submitted a copy of the grievance form on which he

13   wrote his complaints for submission to prison officials.  This form shows that on April 24, 2007,

14   he complained about the March 13, 2007, rejection.  Without stating why, he asserted that the

15   15-day time limit did not apply to his initial appeal.  He claimed that there was no dispute about

16   whether prison officials wrongly disposed of his property.  *Id.*

17   Defendant Gonzales has submitted the declaration of Jennifer Jones, an appeals

18   coordinator at California State Prison, Corcoran, stating that prison officials did not accept on

19   the second level of review any appeal from plaintiff challenging the disposition of property.  *Id.*,

20   Ex. B.  He also submitted the declaration of N. Grannis to show that the CDCR has no evidence

21   that there was any review on the third level of review  the August 8, 2006, disposal of his

22   property.  Defs.' Mot. to Dism., Ex. A.

23   **II.     Standards on Motion to Dismiss**

24   In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must

25   contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic*

26   *Corporation v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964, 1970 (2007)  (stating that the

3

1  12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of its

2  claims which would entitle plaintiff to relief "has been questioned, criticized, and explained

3  away long enough," and that having "earned its retirement," it "is best forgotten as an

4  incomplete, negative gloss on an accepted pleading standard").  Thus, the grounds must amount

5  to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

6  action.  *Bell Atlantic*, 127 S.Ct. at 1965.  Instead, the "[f]actual allegations must be enough to

7  raise a right to relief above the speculative level on the assumption that all the allegations in the

8  compliant are true (even if doubtful in fact)."  *Ibid*.  Dismissal may be based either on the lack of

9  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

10  theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11  The complaint's factual allegations are accepted as true.  *Church of Scientology of

12  California v. Flynn*, 744 F.2d 694 (9th Cir. 1984).  The court construes the pleading in the light

13  most favorable to plaintiff and resolves all doubts in plaintiff's favor.  *Parks School of Business,

14  Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to

15  include specific facts necessary to support the claim.  *NOW*, 510 U.S. at 256 (quoting *Lujan v.

16  Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

17  The court may disregard allegations contradicted by the complaint's attached exhibits.

18  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing,

19  Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).  Furthermore, the court is not required to accept as true

20  allegations contradicted by judicially noticed facts.  *Mullis v. United States Bankruptcy Ct.*, 828

21  F.2d 1385, 1388 (9th Cir. 1987).  The court may consider matters of public record, including

22  pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*,

23  798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal Savings

24  and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "The court is not required to accept legal

25  conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

26  drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

4

1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**III.    Analysis**

    **A.  Procedural Due Process**

       Plaintiff claims that defendant Chirila violated his due process right to a fair hearing on the charge that plaintiff committed battery on a peace officer.  Defendants argue that the claim must be dismissed because the results of the hearing about which plaintiff complains were vacated and the matter was reheard.  In effect, they argue that plaintiff was afforded all process due.

       To state a claim for the deprivation of procedural due process, plaintiff must allege a defendant deprived him of a liberty interest, which may arise independently under the due process clause or as freedom from state deprivation or restraint imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).  A prisoner facing disciplinary measures and whose liberty interest is threatened is entitled to advance written notice of the charges, a hearing, written findings and reasons for the disciplinary action taken and, when it presents no security risk, to call witnesses and present evidence in his defense.  *Wolff v. McDonnell*, 418 U.S. 539, 563-566 (1974).  Such a hardship exists when conditions of confinement do not mirror those in other housing units, but rather "works a major disruption" in the prisoner's environment. *Sandin*, 515 U.S. at 486-87.  Ordinarily, placement in disciplinary segregation works no such disruption.  *Id.*, at 486.  "[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed on inmates in administrative segregation and protective custody."  *See*

1    *Sandin*, 515 U.S. at 486.  For such placement to be "atypical and significant," there must be

2    some extraordinary circumstance or combination of circumstances that make the confinement

3    markedly more severe than non-punitive housing.  *Serrano v. Francis*, 345 F.3d 1071, 1078-79

4    (9th Cir. 2003) (placing handicapped prisoner in disciplinary housing not equipped to

5    accommodate his needs and holding him there for nearly two months was an "atypical and

6    significant hardship" compared to "the ordinary incidents of prison life.").  Plaintiff alleges that

7    he was confined to his cell for nearly 24 hours a day, had fewer than 10 hours on the yard each

8    week, and was denied privileges and access to various programs.  He alleges that this placement

9    "worked a fairly major change in" the conditions of his confinement.  Ordinary prison life is not

10   designed to be comfortable.  Segregation from the general prison population for disciplinary

11   reasons, for obvious reasons, will be more harsh than ordinary prison life.  Plaintiff's allegations

12   amount to no more than a complaint that he did not like the discipline imposed on him.  Nothing

13   in his allegations suggests that the conditions in the SHU worked a deprivation that was atypical

14   and significant under the controlling precedent.

15           To the extent that plaintiff complains of lost time credits, he still cannot prevail.  Such a

16   claim depends upon whether California law creates a federally cognizable liberty interest.  State

17   law does not create a federally protected interest unless it causes a "significant substantive

18   reduction" in decision-making, *see Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984), or

19   create an imperative that mandates action, unless certain clearly defined exceptions are found to

20   apply.  *See Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir.1985) (noting

21   that the Ninth Circuit endorses a restrictive interpretation of *Greenholtz v. Inmates of the*

22   *Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11 (1979)).  Even though California

23   prisoners have a liberty interest in credits earned for good behavior, *see Wolff*, 418 U.S. at 558;

24   Cal. Code Regs. tit. 15, § 3043, it is not clear that they have such an interest in work-time

25   credits.  Under state law, work time credits are a privilege and may be forfeited as a prison

26   disciplinary measure.  *See* Cal. Pen. Code §§ 2932, 2933.  A statute making it a privilege to work

1    and to earn time credits in exchange for their labor is significantly different from the sort of

2    mandatory language that the United State Supreme Court has found to give rise to a federally

3    protected interest.  *See Greenholtz*, 442 U.S. at 11 (state statute providing that parole authority

4    "shall order" a prisoner's release "unless it is of the opinion that his release should be deferred"

5    on some statutory ground created a federally protected interest in release to parole).  However,

6    even assuming a federally protected interest in work time credits, it is not clear that plaintiff lost

7    the credits as a punitive measure.  Plaintiff alleges that defendant Chirila refused to let him have

8    a witness testify at the initial hearing on the rules violation report charging him with battery on a

9    peace officer.  His attachments show that his administrative appeal on this ground was granted

10   and the punishments were rescinded.  Although plaintiff had a second hearing on the same

11   charge, he does not allege any procedural infirmities occurred in it.  In fact, he makes no

12   allegations about the second hearing.  The facts, as alleged by plaintiff, show that he was not

13   only afforded appropriate process in his administrative appeal, he actually prevailed in his effort

14   to obtain a second hearing on the charge.  That the charge was ultimately sustained and plaintiff

15   was found guilty does not mean he was not provided a notice and a meaningful opportunity to be

16   heard.  The face of the complaint demonstrates that plaintiff was provided the process to which

17   he was entitled.

18        For all these reasons, plaintiff fails to state a claim for relief against defendant Chirila.

19   The motion to dismiss on behalf of defendant Chirila must be granted.

20        **B.  Failure to Exhaust**

21        As noted, plaintiff claims that defendant Gonzalez retaliated against him by ensuring the

22   improper disposal of plaintiff's personal property.  Defendant Gonzalez seeks dismissal on the

23   ground that plaintiff did not exhaust the available administrative remedies.  Defs.' Mot. to Dism.,

24   at 5.

25   ////

26   ////

### 1.  <u>Standards Applicable to This Motion</u>

Defendants' exhaustion motion is brought under Rule 12(b) of the Federal Rules of Civil Procedure.  While the Ninth Circuit has stated that  Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined.  The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[1]  *Wyatt*, 315 F.3d at 1119.  However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving.  *Jones v. Bock*, 549 U.S. 199,  ___, 127 S.Ct. 910, 921 (2007).  Federal courts appropriately consider affirmative defenses on summary judgment.  Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion.  Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

### 2.  <u>Rule 56 Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[1]  *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint.  It is a motion in which defendant must raise and prove by evidence the absence of exhaustion.  *Id.*  In this regard, the Ninth Circuit in *Wyatt* provides further guidance.  It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment."  *Id.*, n.14

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.   In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).   The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue.  *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On November 2, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### 3. <u>Failure to Exhaust</u>

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statue makes exhaustion a precondition to *suit*." (citation omitted)).  A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court.  *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).  Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust.  *Id.* at 1051;  *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).  Defendant has the burden of proving that plaintiff did not exhaust.  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit.

15, § 3084.1(a).  The regulations require the use of specific forms but contain no guidelines for grievance content.  *Id.*, at §§ 3084.2, 3085.  Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed.  *Id.*, at § 3084.5.  A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level.  *See Id.*, at § 3084.5(e)(1).  Generally, completion of the third level, the Director's Level of Review, exhausts the remedy.  *Id.*, at § 3084.1(a).

It is undisputed that plaintiff did not file a grievance concerning the August 8, 2006, disposition of his property until March 6, 2007, and that on March 13, 2007, prison officials rejected it as untimely.  Defendant Gonzales has submitted evidence that prison officials did not accept for review any appeal about this rejection.  Plaintiff's evidence is not sufficient to create a genuine dispute about whether he appealed this rejection.  First, it is not clear that plaintiff ever submitted to prison officials his March 20, 2007, handwritten document styled, "response to first level."  There is no date-stamp showing that the appeals coordinator received it.  Furthermore, plaintiff wrote his April 24, 2007, appeal of the rejection on the form as required by the regulations, and the form bears an illegible date-stamp.[2]  This form suggests that he appealed the rejection at least to the first formal level of review.  However, based on the date plaintiff wrote on it, i.e., April 24, shows that he submitted it beyond the 15 work day time limit.  On the evidence before the court, a rational trier of fact could find that plaintiff exhausted the available administrative remedies.  Thus, defendant Gonzales is entitled to judgment as a matter of law.

////

////

////

---

[2] While the stamp is apparent, pertinent information, such as the date, is blacked out.

**IV.      Conclusion**

　　　　For all of the above reasons, the court finds that plaintiff fails to state a claim for relief against defendant Chirila and there is no genuine dispute about whether he exhausted the available administrative remedies with respect to his claim against Gonzales.  These findings are dispositive of this action and the court need not consider defendants' motion to strike plaintiff's demand for punitive damages.

　　　　Accordingly, it is hereby RECOMMENDED that:

　　　　1.  Defendant Chirila's November 11, 2008, motion to dismiss be granted and claims against Chirila be dismissed for plaintiff's failure to state a claim;

　　　　2.  Defendant Gonzales' November 11, 2008, motion to dismiss, construed as a motion for summary judgment, be granted, and judgement be entered in his favor; and

　　　　3.  The Clerk be directed to close the case.

　　　　These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 28, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE